CHARLES L. SHEA, administrator, *vs.* EMMA A. McEVOY.

Middlesex.   January 18, 1915. — February 25, 1915.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Landlord and Tenant,* Landlord's liability for defective common elevator. *Negligence,* Causing death, In use of elevator. *Elevator.*

In an action against the owner of a three tenement house for causing the death without conscious suffering of a child of a tenant occupying the first floor, it appeared that the child was struck, while in a common passageway in the cellar, by the falling upon him of a small elevator or dumb waiter which ran from the cellar through a shaft to the top floor, there being no enclosure about it in the cellar. At the trial it appeared that the elevator was used only by the tenant occupying the third floor, but there was evidence from which the jury were warranted in finding that it was adapted and intended to be used in common by the tenants occupying the second and the third floors and that it remained in the control of the defendant. *Held,* that the defendant owed to the members of the family of the tenant occupying the first floor and using the passageway in the cellar the duty of keeping the elevator in as good condition as it appeared to be at the beginning of his tenancy.

Upon further evidence at the trial of the same action, which tended to show that the fall of the elevator had occurred six months after the beginning of the tenancy of the father of the plaintiff's intestate, that a short time after the accident the broken ends of the hoist rope which had supported the elevator appeared frayed and torn, that pins, which had been adapted to pass through beams on the side of the elevator to steady and hold it in place when it was being hoisted or lowered, were broken, worn off, blackened and discolored, and that the landlord had admitted that he had made no repairs upon the elevator for fifteen years, it was *held* that a verdict for the plaintiff was warranted, because the jury were warranted in finding that the elevator and its appliances were defective at the time of the accident, that they gradually had become so during the fifteen years of their non-repair, and that they were not in as good condition as they had appeared to be when the tenancy of the intestate's father had begun.

TORT for causing the death without conscious suffering of the plaintiff's intestate, Thomas A. Shea. Writ dated October 27, 1910.

In the Superior Court the case was tried before *White,* J. The material evidence is described in the opinion. At the close of the evidence the defendant asked the judge to rule that on all the evidence the plaintiff could not recover. The judge refused so to rule. There was a verdict for the plaintiff in the sum of $1,000; and the defendant alleged exceptions.

*E. C. Stone,* for the defendant.

*T. J. Shea,* for the plaintiff.

CROSBY, J. The plaintiff's intestate, a minor thirteen years of age, was killed on October 15, 1910. This action is brought to recover damages for his death without conscious suffering under R. L. c. 171, § 2, as amended by St. 1907, c. 375. The deceased was the son of the plaintiff and lived with his parents on the first floor of a three tenement house owned by the defendant. The second floor was occupied by a family named Lambert, and the third or top floor was occupied by one Miles and his family.

There was evidence that the cellar was divided into parts for the different tenants, and that the tenants reached the respective portions of the cellar used and occupied by them by means of a common passageway; that in order to go to Shea's cellar it was necessary to pass by an elevator, or dumb waiter, which ran from the cellar to the tenement on the third floor. The plaintiff's intestate was killed by reason of this elevator or dumb waiter falling upon him while he was in the passageway in the cellar. The elevator or dumb waiter consisted of a box or car about thirty inches wide, twenty-four inches deep and thirty-eight inches high, to the top of which was attached a rope which ran over a pulley wheel at the top of the shaft (in which the elevator was operated) above the third floor, the other end of the rope being attached to a weight which hung on one side of the shaft, which weight was hoisted or lowered as the car or box was moved. The elevator weighed about fifty pounds; the weight was of iron, eighteen inches long by nine or ten inches wide, and two inches thick. The hoist rope was one inch in diameter. Another rope was fastened to the bottom of the box or elevator for the purpose of hauling it down. It was raised and lowered entirely by hand. The shaft ran from the cellar floor up through the house, to a point above the third floor. There were openings from the shaft into both the second and third floor tenements, but there was no opening from the shaft into the first or ground floor. The front of the shaft in the cellar was entirely open for a distance of about six and one half feet above the bottom of the shaft; the bottom of the shaft and the cellar floor were on the same level.

There was evidence that on the night of the accident the boy was sent by his mother to the cellar to get some wood and coal;

that when he went to the cellar there was a rope which extended from the elevator shaft across the passageway to the bulkhead steps, where it was tied. There was some evidence to show that this rope had been placed there by a boy named Miles, who lived on the top floor. There was also evidence that the plaintiff's intestate, under the direction of his mother, cut the hoist rope, causing the elevator to fall upon him. On the other hand there was other evidence that the rope was not cut nor interfered with, but that as the boy was in the passageway opposite the opening at the bottom of the shaft, a rumbling sound above was heard, and the elevator fell, striking the boy and causing the injuries from which he died within a short time.

It could not have been ruled that the elevator was not furnished by the defendant for the common use of her tenants on the second and third floors. It is not contended that the tenant Shea had any right to use it. There was evidence that it was used only by the tenant Miles, who occupied the top floor, and that he was the only person who was authorized to use it. There was no evidence that it had been used by the tenants who occupied the second floor, but this is not conclusive; the building was so constructed that the elevator could be used by the tenants of the two upper floors. There was an opening on each of these floors; besides the defendant testified that she bought the house about sixteen years before the accident occurred; that the dumb waiter was in the house when she bought it, and that she told Mrs. Shea, the intestate's mother, that it was a dumb waiter to bring up coal and wood, and "that she never gave any orders not to use it." She further testified that from this dumb waiter there were openings into some of the flats where people could take out their wood and coal, and that these openings were on the second and third floors. The defendant also testified that "she had not replaced the ropes in this elevator in any way since she bought the house about fifteen years ago, and had never done any repairs on it during that time."

It was a question for the jury upon all the evidence whether the defendant authorized the tenant Miles solely to use the elevator, or whether it was furnished by her for the use of the tenants upon the second and third floors. If the jury found that it was furnished for the use of the tenants of both floors in common,

and that it remained under the control of the defendant, then the defendant owed to the tenant Shea and the members of his family the duty of keeping the elevator in as good condition as it appeared to be in at the beginning of Shea's tenancy. *Andrews* v. *Williamson,* 193 Mass. 92. *Domenicis* v. *Fleisher,* 195 Mass. 281. The tenancy of Shea, the father of the deceased, began in April, 1910; the accident occurred about six months later. The plaintiff testified that on the evening of the accident and a short time after it occurred, he examined the elevator and found that there was an upright beam or timber on each side of the elevator, in the centre of which beam was a slot or groove, and that on each side of the elevator on the outside were wooden pins, intended, when they were whole and in good condition, to fit into the slots and steady and hold in place the elevator when it was being hoisted or lowered; that these pins had become broken or worn off, and that the ends were black and discolored. There was further evidence that the broken ends of the hoist rope, where it had parted, were frayed and torn.

We are of opinion that the jury could have found that the elevator and the appliances connected therewith were in an unsafe and defective condition, and that they were not in as good a condition as they appeared to be in when Shea's tenancy began. The jury would have been warranted in finding that the hoist rope which broke and caused the elevator to fall upon the deceased had become gradually weaker during the fifteen years it had been in use down to the time of the accident.

The defendant contends that the negligence which caused the death of the plaintiff's intestate could not be found to be the act or neglect of the defendant, but that it was due to the intervening act of a third person in tying the rope across the passageway from the elevator to the bulkhead steps. There is nothing to show that such act had any connection with the falling of the elevator. If the deceased cut the hoist rope and allowed the elevator to fall upon him, it may be conceded that the plaintiff would not be entitled to recover. As to this contention the jury would seem to have found against the defendant.

We are of opinion that the presiding judge could not have directed a verdict for the defendant.

*Exceptions overruled.*